# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

JAMES E. MORROW,

      Petitioner,

v.                                                Case No. 2:22-cv-02125-MSN-tmp

KEVIN GENOVESE,

      Respondent.

---

**ORDER DENYING MOTION TO REFILE THE AMENDED PETITION ON THE OFFICIAL FORM; DENYING THE CONSOLIDATED AMENDED § 2254 PETITION; DENYING MOTIONS FOR DE NOVO REVIEW; DENYING MOTION FOR JUDICIAL NOTICE; DENYING A CERTIFICATE OF APPEALABILITY; CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH; AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

---

On February 28, 2022, Petitioner James E. Morrow, Tennessee Department of Correction ("TDOC") register number 296239, who is confined at the Northwest Correctional Facility ("NWCX") in Tiptonville, Tennessee,[1] filed a Petition under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody. (ECF No. 1, "§ 2254 Petition.") On April 14, 2022, Petitioner filed an Amended Petition For Habeas Corpus Relief. (ECF No. 12, "Amended § 2254 Petition.") On May 9, 2022, Petitioner asked the Court to allow the Amended § 2254 Petition under Fed. R. Civ. P. 15. (ECF No. 15.) Given that Respondent had not yet filed an answer to the § 2254 Petition, the Court allowed Petitioner's amendment as a matter of course under Rule 15. (ECF No. 29.) For the purpose of considering the merits of Petitioner's habeas claims, the Court

---

[1] *See* https://foil.app.tn.gov/foil/details.jsp (Tennessee Department of Correction Felony Offender Information website) (last accessed Mar. 11, 2025).

**CONSOLIDATES** the § 2254 Petition and the Amended § 2254 Petition as the "Consolidated Amended § 2254 Petition" (ECF Nos. 1 & 12).

Before the Court are: (1) Petitioner's "motion to re-file [the] amended petition" (ECF No. 43, "MTR"); (2) his motions for de novo review (ECF Nos. 39 & 40, "Motions For De Novo Review"); (3) his motion to take judicial notice (ECF No. 41, "Motion For Judicial Notice"); and (4) the Consolidated Amended § 2254 Petition.

For the following reasons: (1) the MTR (ECF No. 43) is **DENIED** as moot; (2) the Motions For De Novo Review (ECF Nos. 39 & 40) are **DENIED**; (3) the Motion For Judicial Notice (ECF No. 41) is **DENIED**; and (4) the Consolidated Amended § 2254 Petition (ECF Nos. 1 & 12) is **DENIED WITH PREJUDICE** as the claims are either improperly pled, without merit, non-cognizable in federal habeas, or procedurally defaulted.

## I.    BACKGROUND

### A. Factual Background & Trial

On December 10, 1996, a Shelby County Criminal Court grand jury indicted Petitioner on two counts of first degree premeditated murder. *State v. Morrow*, No. W1998-0583-CCA-R3-CD, 1999 WL 1529719, *1 (Tenn. Crim. App. Dec. 29, 1999) ("*Morrow I*"), *perm. app. denied* (Tenn. June 26, 2000). (*See also* ECF No. 19-1 at PageID 238–41; ECF No. 19-8 at PageID 941.) Betty Thomas, of the Shelby County Public Defender's Office ("SCPDO"), represented Petitioner at trial. Following a bench trial on April 8, 1998, and July 6–7, 1998 (ECF No. 19-3 at PageID 455; ECF No. 19-4 at PageID 599), Petitioner was convicted on both counts of first degree murder. *Id.* at *2. The Tennessee Court of Criminal Appeals ("TCCA") summarized the evidence presented at trial as follows:

> On June 21, 1996, James Morrow called 911 and told the operator that he had stabbed his wife and son to death, and that he had attempted to commit suicide. Police, responding to the call, arrived at the defendant's house and found both the defendant's wife, Velma, and his son, Jerrell, dead as the result of multiple knife

wounds [the "Incident"]. The defendant was severely injured. Medical personnel arrived shortly thereafter and transported the defendant to a hospital where he was treated for multiple self-inflicted knife wounds and the apparent ingestion of a household cleaning solution.

Two days later, police officers questioned the defendant at the hospital. After waiving his *Miranda* rights, the defendant told the police that he had killed his wife and son because he was suffering from delusions at the time. This statement was typed by the police and signed by the defendant.

The defendant was indicted in December 1996, and the trial court ordered a psychiatric evaluation to determine whether the defendant was competent to stand trial. Dr. Wyatt Nichols, a clinical psychologist, found that although the defendant was competent to stand trial, he was insane at the time of the killings. The state proceeded to hire a second psychologist, Dr. Edward Wise. After conducting several interviews with the defendant and researching the defendant's medical background, Dr. Wise concurred with Dr. Nichols' earlier result.

On April 8, 1998, the defendant waived his right to a jury trial, and a bench trial commenced. First, the State Medical Examiner testified that although both victims died from multiple stab wounds, they each probably remained alive for some time while being stabbed. Next, a police officer who arrived on the scene testified that the defendant calmly asked the officer to shoot him and became angry when the officer did not. The officer who questioned the defendant in the hospital testified that the defendant waived his *Miranda* rights and voluntarily confessed to the murders. After this testimony, the state rested.

The defense called Dr. Nichols, who testified that in his opinion the defendant was insane at the time of the homicides. After a thorough cross-examination, however, Dr. Nichols admitted that the killings could have been the result of jealousy, not insanity. The defense then called Dr. Wise to testify. Unfortunately, Dr. Wise's schedule conflicted with the court's, and the remainder of the trial was rescheduled to accommodate Dr. Wise's schedule.

The trial did not resume until July 6, 1998, almost three months later. During the recess, the defendant and his attorney apparently had a disagreement. Both the defendant and his attorney filed separate motions asking the trial court to allow the defense counsel to withdraw and to appoint new counsel. When the trial resumed, the court denied those motions, and the defense continued presenting its case.

The defense called Dr. Wise who testified that he, too, was of the opinion that the defendant was insane at the time of the commission of the offenses. On cross-examination, Dr. Wise rejected the hypothesis that the killings were a result of the defendant's jealousy. The defense then rested.

In rebuttal, the state called seven (7) witnesses to rebut the experts' conclusions that insanity, not jealousy, precipitated the crime. All of these witnesses testified to seeing and/or hearing specific instances of the defendant's jealous, controlling

behavior before the killings took place.  The trial court convicted the defendant and sentenced him to two concurrent life sentences.

*Morrow I*, 1999 WL 1529719, at *1–2.

At sentencing, the court imposed two life sentences with the possibility of parole.  *Id*.  (*See also* ECF No. 19-2 at PageID 418–19.)  Petitioner filed a *pro se* motion for a new trial.  (ECF No. 19-2 at PageID 424–32.)  Defense counsel also filed a motion for a new trial.  (ECF No. 19-8 at PageID 941.)  Counsel then filed an amended motion for a new trial.  (ECF No. 19-2 at PageID 421–22.)  *See also Morrow v. State*, No. W2019-01488-CCA-R3-PC, 2021 WL 4077029, at *4 (Tenn. Crim. App. June 1, 2021) ("*Morrow II*"), *perm. app. denied* (Tenn. Jan. 13, 2022).  At an October 5, 1998 hearing, trial counsel argued the issues raised in the motions for new trial, except for Petitioner's claim that he had received ineffective assistance of counsel ("IAC")—which trial counsel believed was non-meritorious.  *Id*. at *4.  (*See also* ECF No. 19-8 at PageID 941.)  The trial court: (1) considered all issues raised by both counsel and Petitioner; and (2) denied all motions.  *Id*. at *5.  (*See also* ECF No. 19-2 at PageID 434.)  On November 2, 1998, the court granted the SCPDO's motion to withdraw from further representation.  (ECF No. 19-2 at PageID 437–38; ECF No. 19-2 at PageID 439; ECF No. 19-8 at PageID 941.)  R. Price Harris was appointed as Petitioner's appellate counsel.  (ECF No. 19-2 at PageID 439–40.)

### B.  Direct Appeal

On October 12, 1998, Petitioner filed a direct appeal, raising these issues: (1) sufficiency of the evidence; and (2) trial court errors by (a) denying defense counsel's motion to withdraw, (b) "disregarding" the expert testimony of Dr. Wise and Dr. Nichols, (c) "allowing the State to call lay witnesses with no prior notification to the defense," (d) "allowing the State to call witnesses to testify about its case-in-chief under the guise of rebuttal," and (e) admitting Petitioner's confession obtained during his hospitalization.  *See Morrow I*, 1999 WL 1529719, at *2–5.  (*See also* ECF No. 19-2 at PageID 436; ECF No. 19-8 at PageID 940; ECF No. 19-10 at PageID 1022.)  The

4

TCCA affirmed Petitioner's conviction.  *Morrow I*, 1999 WL 1529719, at *1, *6.  (*See also* ECF No. 19-10 at PageID 1021–31; ECF No. 19-11 at PageID 1032.)

### C.  <u>Post-conviction proceeding</u>

On April 23, 2001, Petitioner filed his initial *pro se* petition for post-conviction relief ("PCR").  (*See* ECF No. 20-1 at PageID 1577.)  On November 18, 2016, he filed a *pro se* amended PCR petition (ECF No. 20-1 at PageID 1419–60) and brief (*id*. at PageID 1478–1537).  He filed more *pro se* amended PCR petitions on: September 1, 2017 (ECF No. 20-1 at PageID 1559–61); July 31, 2001 (*id*. at PageID 1578); January 15, 2004 (*id*. at PageID 1580); June 25, 2004 (*id*. at PageID 1580); January 18, 2005 (*id*. at PageID 1581); and May 3, 2005 (*id*.).

Petitioner, "over the course of eighteen years, filed many amended petitions and additional motions, including motions to recuse multiple trial judges.  These numerous filings and resulting hearings, at times with assistance of elbow counsel in light of the Petitioner's insistence that he proceed *pro se*, caused hearing dates for the petition itself to be re-set multiple times from 2001 to 2016.  The post-conviction court, at several points, found Petitioner's actions to be an intentional obstruction of the proceedings."  *Morrow II*, 2021 WL 4077029, at *2.  (*See also* ECF No. 20-1 at PageID 1582 (the PCR trial court's reference to Petitioner's "history of obstructionist tactics" with "numerous and continuous objections" and "meritless motions").)  "[A]fter having put up with over a decade of clear abuse of process by the [P]etitioner, which produced no credible proof of the truth of the allegations of his multiple petitions, but only repetitive, obstructionist motions which contained no truth or merit year after year, it became crystal clear to th[e] [post-conviction trial] court that this purposeful abuse of our legal system by [P]etitioner must come to an end."  *Id*.

When Petitioner's claims were finally ready for adjudication, the post-conviction trial court construed the issues in Petitioner's PCR petitions as:

(1) trial court error when it overruled Petitioner's objection to allowing the testimony of rebuttal witnesses;

(2) judicial misconduct by the trial judge in (a) ignoring Petitioner's *pro se* motion about IAC by trial counsel, (b) making false statements on the record, and (c) allowing the State to seek expert witness testimony that would disprove Petitioner's defense;

(3) prosecutorial misconduct in knowingly soliciting false testimony under the guise of rebuttal testimony;

(4) denial of Petitioner's right to a fair trial;

(5) IAC at trial and on appeal;

(6) the trial judge failed to hold inquiries into conflicts of interest between Petitioner and his appointed counsel;

(7) trial counsel failed to object to the State's questioning of Dr. Nichols about Petitioner's prior bad acts and failed to ask for curative instructions;

(8) trial counsel rendered IAC by (a) advising Petitioner to waive his right to a jury trial, (b) failing to arrange hearings on motions, (c) failing to call witnesses, (d) failing to preserve for appeal the issues of prosecutorial misconduct, (e) abandoning the adversarial role, and (f) deficient performance during the motion for new trial;

(9) trial court's abuse of discretion in compelling trial counsel to represent Petitioner during the motion for new trial; and

(10) deprivation of due process from the trial court's failure to inquire about Petitioner's request for substitution of counsel.

(ECF No. 20-1 at PageID 1576–98.)

The post-conviction trial court held several evidentiary hearings. (ECF No. 20-11 at PageID 2047 (January 9, 2015); ECF No. 20-14 at PageID 2128 (June 10, 2016); ECF No. 20-18 at PageID 2202 (December 19, 2016); ECF No. 20-20 at PageID 2375 (September 1, 2017); ECF No. 20-23 (January 3, 2019).) *See also Morrow II*, 2021 WL 4077029, at *2–4. Petitioner and trial counsel testified before the post-conviction trial court. *Id.* The post-conviction trial court denied relief on August 16, 2019, finding that all ten claims lacked merit. (ECF No. 20-1 at PageID 1592–98.) *See also Morrow II*, 2021 WL 4077029, at *4. Petitioner next filed an appeal to the TCCA, arguing that:

6

(1) the post-conviction trial court erred when it denied Petitioner a full and fair post-conviction hearing;

(2) the post-conviction trial court erred when it barred Petitioner from making a closing argument at the post-conviction evidentiary hearing;

(3) the post-conviction trial court violated Petitioner's right to subpoena witnesses to the post-conviction hearing; and

(4) trial counsel rendered IAC by (a) erroneously inducing Petitioner to waive his right to a jury trial, (b) failing to appeal the trial court's denial of Petitioner's motion to substitute counsel[2] and failing to argue this issue at the motion for new trial, (c) failing to submit Petitioner's medical records at trial, and (d) failing to "follow through" on "promises" trial counsel made during opening argument.

*See Morrow II*, 2021 WL 4077029, at \*5.  (*See also* ECF No. 22-21 at PageID 3078.)  Concluding that each of Petitioner's claims lacked merit, the TCCA affirmed the judgment of the post-conviction trial court on September 7, 2021.  *Morrow II*, 2021 WL 4077029, at \*1, \*9.  (*See also* ECF No. 22-22 at PageID 3100-12; ECF No. 22-23 at PageID 3113.)  On January 13, 2022, the Tennessee Supreme Court ("TSC") denied Petitioner's application for discretionary review.  (*See* ECF No. 22-24 at PageID 3114-59; ECF No. 22-25 at PageID 3173.)

### D. Federal Habeas Proceeding

On February 28, 2022, this Court received Petitioner's initial § 2254 Petition (ECF No. 1 at PageID 1), which raises the following claims:

(1) Trial counsel's IAC by:

(a) giving "erroneous and unethical advice to waive [Petitioner's] rights to [a] jury trial" ("Claim 1") (ECF No. 1-1 at PageID 18);

(b) not (i) objecting to the trial court's failure to inquire about Petitioner's reasons for seeking substitution of counsel or (ii) appealing the denial of Petitioner's motion to substitute counsel ("Claim 2") (*id*. at PageID 20–21);

---

[2]  Petitioner specifically raised this claim as one of IAC by trial counsel, rather than error by the trial court.  (*See* ECF No. 22-21 at PageID 3078.)

(c) not appealing the trial court's failure to appoint new counsel to argue Petitioner's motion for substitution of counsel[3] ("Claim 3") (*id*. at PageID 21–22);

(d) not "utiliz[ing] [Petitioner's] medical records at trial" ("Claim 4") (*id*. at PageID 22–23) ; and

(e) not "follow[ing] through on promises made during opening statement" ("Claim 5") (*id*. at PageID 35–36);

and

(2) The post-conviction trial court's deprivation of Petitioner's due process rights by:

(a) denying his "rights to subpoena witnesses to testify at the post-conviction hearing, present evidence, rebut prior testimony, make offer of proof, and make closing argument at the [post-conviction] hearing" ("Claim 6") (*id*. at PageID 39);

(b) "refus[ing] to allow [Petitioner] to make closing statements" ("Claim 7") (*id*. at PageID 38–39); and

(c) "violat[ing] the Tennessee Post Conviction Act" ("Claim 8") (*id*. at PageID 39).

(ECF No. 1-1 at PageID 42–43.)  On March 1, 2022, the Court ordered Respondent to answer the § 2254 Petition.  (ECF No. 4.)

On April 14, 2022, Petitioner filed the Amended § 2254 Petition, seeking to add the following claim to the initial § 2254 Petition: "whether [the] trial court's order forcing attorney to continue her representation of Morrow over counsel's objection based on conflict of interest require[s] automatic reversal." ("Claim 9") (ECF No. 12 at PageID 91.)

On June 27, 2022, Respondent filed his answer to the Consolidated Amended § 2254 Petition.  (ECF No. 23, "Response") (addressing claims in the § 2254 Petition (*see* ECF No. 23 at PageID 3188–97 & 3198–99) and in the Amended § 2254 Petition (*see id*. at PageID 3197–98).)

---

[3] Petitioner expressly alleges that "[t]rial counsel", not appellate counsel, was deficient for failing to appeal the trial court's denial of substitution of counsel.  (ECF No. 1-1 at PageID 20.)

On September 22, 2022, Petitioner filed his reply to the Response (ECF No. 28, "Reply"), which the Court deemed timely filed.  (ECF No. 29 at PageID 3263.)

### E.  The MTR

In the MTR filed on January 28, 2025, Petitioner seeks "permission to re-file his amended petition on the official 2254 writ of habeas corpus form."  (ECF No. 43 at PageID 3449.)  On a typewritten § 2254 habeas petition official form, he re-alleges the "(8) grounds raised" in the initial § 2254 Petition, along with Claim 9 raised in the Amended § 2254 Petition.  (ECF No. 43-1 at PageID 3452–68, "First Typewritten Putative Petition.")

On February 5, 2025, Petitioner submitted what he styles as his "Second Re-Filing Of Amended Petition On Official Form", in which he re-asserts Claim 9 of the Amended Petition. (ECF No. 46 at PageID 3474–76; ECF No. 46-1 at PageID 3477–91, "Second Typewritten Putative Petition.")

Petitioner acknowledges that the First and Second Typewritten Putative Petitions merely re-allege on the official § 2254 form the claims of the initial § 2254 Petition (ECF No. 1) and the Amended § 2254 Petition (ECF No. 12).  (*See* ECF No. 43 at PageID 3449–50; ECF No. 45 at PageID 3472; ECF No. 46 at PageID 3474–75.)  Because the Court finds no reason for Petitioner to re-allege claims previously prevented, the MTR (ECF No. 43) is **DENIED**.  The Consolidated Amended § 2254 Petition (ECF Nos. 1 & 12) remains the operative petition.

## II.    STANDARDS OF REVIEW

### A.  Exhaustion

A federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies by presenting the same claim sought to be redressed in a federal habeas petition to the state courts pursuant to and (c). *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  The petitioner must "fairly present" each claim to

each appropriate state court, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004), except where the state has explicitly disavowed state supreme court review as an available state remedy, *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999). Tennessee Supreme Court Rule 39, effective June 28, 2001, eliminated the need to seek review in the TSC to "be deemed to have exhausted all available state remedies." *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

To fairly present a federal claim, a prisoner must present the same facts and legal theory to the state courts as are raised in his federal habeas petition. *See Anderson v. Harless*, 459 U.S. 4, 6–7 (1982); *Picard v. Connor*, 404 U.S. 270, 276–77 (1971); *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) ("The exhaustion doctrine requires the petitioner to present the same claim under the same theory to the state courts before raising it on federal habeas review") (internal quotation marks and alteration omitted). In evaluating whether a prisoner has "fairly presented" a claim to a state appellate court, the controlling document is the inmate's brief. *See Baldwin*, 541 U.S. at 32 ("[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so").

Where a state prisoner's claim has been adjudicated on the merits in state court, a federal court can issue a writ only if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). A petitioner carries the burden of proof for this "difficult to meet" and "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt" (referred to as "Habeas Standard of Review"). *Pinholster*, 563 U.S. at 181 (internal

quotation marks and citations omitted).  A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).  "[A] run-of-the-mill state-court decision applying the correct legal rule ... to the facts of a prisoner's case" does not "fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Id.* at 406.

### B.  <u>Procedural Default</u>

The procedural default doctrine is ancillary to the exhaustion requirement.  *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine).  If a claim has never been presented to the state courts but a state court remedy is no longer available (*such as* when an applicable statute of limitations bars a claim), the claim is technically exhausted due to the expiration of potential remedies, but still barred by procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Tennessee's one-year statute of limitations and "one-petition" rule on post-conviction petitions generally prevent a return to State court to litigate any additional constitutional claims.  *See* Tenn. Code Ann. §§ 40-30-102(a) (one-year limitation period), 40-30-102(c) ("one-petition" rule); *Hodges*, 727 F.3d at 530 (noting that a Tennessee petitioner "no longer has any state court remedies to exhaust" when he failed to present claim in initial post-conviction petition).  To avoid procedural default, a habeas petitioner in Tennessee must present his federal claims to the trial court and, on appeal, to the TCCA.  *Covington v. Mills*, 110 F. App'x 663, 665 (6th Cir. 2004) (to avoid procedural default, federal law requires a federal habeas petitioner in Tennessee to present his federal claims to the TCCA).  Accordingly, where a Tennessee habeas petitioner fails to fairly present his federal claim to the State courts prior to filing her federal habeas petition, there is generally no longer a State remedy to exhaust.  In such cases, the claim is technically exhausted but procedurally defaulted.

11

*See Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). Due to Tennessee's "one-petition" rule for post-conviction proceedings, the Petitioner cannot now bring a claim in state court. *See* Tenn. Code Ann. § 40-30-102(c).

Under either scenario, a petitioner must show (1) cause to excuse his failure to present the claim and (2) actual prejudice stemming from the constitutional violation or, alternatively, that a failure to review the claim will result in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995); *Coleman*, 501 U.S. at 750; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (to excuse a procedural default and permit consideration of the merits of a procedurally defaulted claim, a petitioner must show "cause for the default and prejudice from the asserted error"); *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015). A petitioner may establish cause by "show[ing] that some objective factor external to the defense"—a factor that "cannot be fairly attributed to" the petitioner—"impeded counsel's efforts to comply with the State's procedural rule." *Davila v. Davis*, 582 U.S. 521, 528 (2017) (citations omitted). To establish prejudice, "a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 166 (1982) (emphasis in original); *see also Garcia-Dorantes v. Warren*, 801 F.3d 584, 598 (6th Cir. 2015) (internal quotation marks omitted). The burden of showing cause and prejudice is on the habeas petitioner. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999). To demonstrate a fundamental miscarriage of justice, a petitioner must establish that a constitutional error has probably resulted in the conviction of a person who is actually innocent of the crime. *Schlup*, 513 U.S. at 321.

## III.    **ANALYSIS**

For the reasons explained below, the Consolidated Amended § 2254 Petition does not warrant the new trial that Petitioner seeks (*see* ECF No. 1 at PageID 15) because his habeas claims are either: (1) without merit (Claims 1 – 5); (2) improperly pled (Claims 4 & 5); (3) non-cognizable in federal habeas (Claims 6 – 8); or (4) procedurally defaulted (Claim 9).

### A.    **The IAC Issues (Claims 1 – 5) Lack Merit**

An IAC claim of deprivation of the Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984).  To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[4]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052.  Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687, 104 S. Ct. 2052.

---

[4]  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."  *Strickland*, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Id.*

13

*Richter*, 562 U.S. at 104; *see also id.* at 111–12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different") (citing *Strickland*, 466 U.S. at 694).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

## 1. Claim 1: IAC For Erroneous Advice To Waive Petitioner's Right To A Jury Trial

Petitioner contends that trial counsel rendered deficient performance by advising him to waive his right to a jury trial before counsel had obtained (1) a written agreement with the State that Petitioner was not guilty by reason of insanity and (2) the trial court's approval of such agreement. (ECF No. 1-1 at PageID 18–19.) Suggesting that counsel lied to him about obtaining

the written agreement, Petitioner argues that "[c]ounsel's failure to get the stipulation and agreement in writing and pre-approved by the court violated Morrow's state and federal […] rights to effective assistance of counsel." (*Id*. at PageID 19.)

Claim 1 was exhausted before the TCCA and is entitled to habeas review on the merits. *See Morrow II*, 2021 WL 4077029, at *4–5, 8. (*See also* ECF No. 22-21 at PageID 3078.) Respondent argues that the TCCA's rejection of Claim 1 during post-conviction appellate proceedings was not contrary to, or an unreasonable application of, federal law and was not based on an unreasonable determination of the facts. (ECF No. 23 at PageID 3189–91.)

After explaining the standards for evaluating IAC claims under *Strickland* and its progeny, *see Morrow II*, 2021 WL 4077029, at *7–8, the TCCA concluded during post-conviction appeal that Petitioner had not met *Strickland*'s deficient performance prong:

> At the conclusion of the proof, in an order, the post-conviction court addressed nine of the Petitioner's post-conviction relief claims, including his claim that he had received the ineffective assistance of counsel, finding them all to be without merit. Specific to the Petitioner's claim in this appeal that he received the ineffective assistance of counsel, the post-conviction court made the following findings:
>
> > On April 8, 1998, prior to the start of the bench trial, the [P]etitioner was voir dired by the judge, who read the signed waiver, which is filed in the technical record, read it to him, explained it to him .... His attorney put on the record at that time that he had been found competent, and he stated that he was only on medication for back problems and esophagus problems, which did not affect his ability to understand what was taking place and he was able to follow everything clearly.
> >
> > The [P]etitioner admitted during the hearing that he had signed the waiver, but testified that [trial counsel] tricked him into waiving because she guaranteed that he would be found not guilty by reason of insanity. [Trial counsel], on the other hand, testified that she talked to the [P]etitioner extensively about this issue because she did not want him to waive his right to a jury trial, but the [P]etitioner insisted on a bench trial. She testified that "I was adamant about having a jury trial, but you were pretty headstrong at that time and wanted to have a bench trial." When he changed his mind later, after they had already begun, she asked to withdraw because she was "pissed." "You were difficult to deal with. You were a man who

15

was pushy." This court finds [trial counsel's] testimony very credible and the [P]etitioner's testimony incredible and finds that the [P]etitioner freely and voluntarily waived his right to a jury trial.

The Petitioner contends that trial counsel tricked him into waiving his right to a jury trial on a false promise that he would receive no jail time. Relative to this claim, the post-conviction court accredited trial counsel's testimony that she urged the Petitioner to seek a jury trial and not a bench trial. Conversely, the post-conviction court discredited the Petitioner's testimony that she advised him to have a bench trial. We reiterate that all questions concerning the credibility of witnesses are to be resolved by the lower court, not the appellate courts.

The evidence does not preponderate against the post-conviction court's findings. Trial counsel testified that she and the Petitioner discussed extensively the decision about whether or not to proceed with a jury trial. Trial counsel recalled that she preferred jury trials and advised the Petitioner to proceed with a jury but he was insistent on a bench trial. Indeed, trial counsel testified that she advocated for the Petitioner's withdrawal of the waiver to be granted at the motion for new trial hearing. The Petitioner has not shown that trial counsel was ineffective in this regard. Accordingly, the Petitioner is not entitled to relief with regard to this claim.

*Morrow II*, 2021 WL 4077029, at *8 (internal citation omitted).

The state court record supports the TCCA's determination that Petitioner failed to demonstrate *Strickland*'s defective performance as to waiver of his right to a jury trial. The trial judge voir dired Petitioner thoroughly about the waiver and confirmed on the record that he understood it meant he was giving up his opportunity to present his case to a jury. *See Morrow II*, 2021 WL77029, at *4. (*See also* ECF No. 19-3 at PageID 456–58; ECF No. 20-1 at PageID 1593.) Defense counsel confirmed on the pre-trial record that she had reviewed the waiver with Petitioner and that he had been found competent to present his defense. (ECF No. 19-3 at PageID 456–58.)

At Petitioner's post-conviction hearing on December 19, 2016, Petitioner admitted that he had signed the jury trial waiver, but he argued that he had been tricked into it because his counsel had guaranteed that he would not be found guilty by reason of insanity. Petitioner claimed trial counsel told Petitioner that: the stipulation about his sanity was binding on the trial court; the State had conceded he was insane; the issue of his insanity was "cut and dry"; and the trial court "had no other choice" than to find him not guilty by reason of insanity. *See Morrow II*, 2021 WL

16

4077029 at *2.  (*See also* ECF No. 20-1 at PageID 1593; ECF No. 20-18 at PageID 2225, 2227, 2232–34.)  Trial counsel— who had nine years of experience with the SCPDO[5]—testified at the post-conviction hearing that she had discussed with Petitioner the "pros and cons" of a bench trial, and she strongly advised him against waiving his right to a jury trial.  *Morrow II*, 2021 WL 4077029 at *3.  Counsel said she had been adamant about having a jury trial, but Petitioner was headstrong about having a bench trial (ECF No. 20-1 at PageID 1593):

> You and I spoke, when I say extensively, several times about the options of either having a jury trial or having a bench trial.  Several times, a lot of times.  Because I wanted to have a jury trial.  I like jury trials.  I prefer jury trials.  And we talked extensively about the options, about the pros and cons.  And you felt that when you had those two experts saying that you were not guilty because of insanity, that's what you wanted to do [to waive a trial by jury].  So you were the client, and though I wanted to do something different, it was your choice to be made.

(ECF No. 20-20 at PageID 2445–46; *see also id.* at PageID 2449 (commenting that Petitioner was "difficult to deal with [and] pushy").)

Section 2254(d) does not "give federal habeas courts license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (applying pre-AEDPA version of § 2254(d)).  Even if "[r]easonable minds reviewing the record might disagree about the [evidence], on habeas review that does not suffice to supersede the [state] court's credibility determination."  *Rice v. Collins*, 546 U.S. 333, 341–42 (2006).  Accordingly, in a federal habeas proceeding, state-court credibility determinations are accorded considerable deference, given "the respect due state courts in our federal system," and federal habeas courts presume them "correct absent clear and convincing evidence to the contrary."  *Miller-El v. Cockrell*, 537 U.S. 322, 339–40 (2003); *see also Howell v. Hodge*, 710 F.3d 381, 386 (6th Cir. 2013) (a federal habeas court "may not lightly ignore" a state

---

[5]  Trial counsel took a seat on the bench of the Tennessee General Sessions Court in 1998, and she remains a judge with that tribunal.  (*See* https://www.tncourts.gov/courts/general-sessions-courts/judges/betty-j-thomas-moore (last accessed Mar. 11, 2025).)

court's "credibility findings; they are entitled to 'great deference' and 'must be sustained unless [they are] clearly erroneous,' particularly in the context of AEDPA-limited habeas review") (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)).

Given the post-conviction trial court's credibility determinations about the waiver of jury trial, the TCCA's conclusion about Claim 1 was based on a reasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d)(2). The post-conviction trial court found defense counsel's testimony "very credible and the petitioner's testimony incredible." (ECF No. 20-1 at PageID 1594 (concluding that Petitioner freely and voluntarily waived his right to a jury trial).) When crediting counsel's testimony about the waiver, the post-conviction trial court emphasized that Petitioner's contention counsel tricked him into the waiver was "factually false and without merit." (ECF No. 20-1 at PageID 1594.) The TCCA concluded the record supported that determination. *Morrow II*, 2021 WL 4077029, at *8. The TCCA's "determination of [the] factual issue" that Petitioner had freely and voluntarily waived his right to a jury trial "shall be presumed to be correct." *See* 28 U.S.C. 2254(e)(1). Petitioner has not rebutted this presumption with clear and convincing evidence. *See id*. (*See also* ECF Nos. 1, 12 & 28.) Having considered the evidence presented during post-conviction proceedings, it was reasonable for the TCCA to determine that Petitioner failed to demonstrate *Strickland*'s deficient performance prong. *Morrow II*, 2021 WL 4077029, at *8. The TCCA's rejection of Claim 1 was not contrary to, or an unreasonable application of *Strickland* and its progeny, and was not based on an unreasonable determination of the facts in light of the evidence presented in state court.

To the extent Claim 1 alleges a violation of Petitioner's right to effective assistance of counsel under the Tennessee Constitution (ECF No. 1-1 at PageID 19), Petitioner's state law claim is not cognizable in habeas. Under 28 U.S.C. § 2254(a), a district court may entertain "an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment

18

of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (emphasis added). A state court decision that rests entirely on state law generally is not subject to federal habeas review. *See*, *e.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (holding that claims alleging state law error or an incorrect application of state law do not present cognizable issues for federal habeas review: "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law'") (internal citation omitted); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *see also Wilson v. Parker*, 515 F.3d 682, 705 (6th Cir. 2008) ("[a] federal court cannot issue a writ of habeas corpus 'on the basis of a perceived error of state law'") (quoting *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). The threshold question in a federal habeas petition, therefore, is whether it even raises claims that a petitioner is in custody in violation of federal law. To the extent Claim 1 alleges violation of Petitioner's "state due process rights to effective assistance of counsel" (ECF No. 1-1 at PageID 19), his contention is not cognizable in this federal habeas action.

For the reasons explained above, Claim 1 is **DENIED**.

### 2. Claims 2 And 3: IAC By Not Appealing (i) The Denial Of Petitioner's Motion For Substitution Of Counsel And (ii) The Failure To Appoint New Counsel To Argue Petitioner's Motion For Substitution Of Counsel

Petitioner contends that trial counsel should have appealed (1) the trial court's denial of his motion to substitute counsel and (2) the trial court's failure to appoint new counsel to argue that motion. (ECF No. 1-1 at PageID 19–22.) He criticizes counsel for failing to "put on proof to show that good cause existed to warrant substitution of counsel." (*Id*. at PageID 20.)

Since Petitioner exhausted Claims 2 and 3 during post-conviction appeal, they are entitled to habeas review on the merits. *See Morrow II*, 2021 WL 4077029, at *5, 7–8. (*See also* ECF No. 22-21 at PageID 3078.)

19

The TCCA combined Claims 2 and 3 and construed them as an IAC claim for failing to

appeal the denial of Petitioner's motion for trial counsel to withdraw.  *Id*. at *8.  Denying relief,

the TCCA concluded that Petitioner failed to show trial counsel's deficient performance under

*Strickland*.  The TCCA explained that any appeal by counsel would have failed due to the wide

discretion afforded the trial court on Petitioner's motion for counsel's withdrawal:

> The Petitioner claims that trial counsel was ineffective for failing to appeal his
> motion to have her withdraw her representation of the Petitioner.  The post-
> conviction court found this allegation to be without merit.  The evidence does not
> preponderate against this finding.  The evidence presented at the post-conviction
> hearings was that trial counsel did in fact advocate to be relieved of representing
> the Petitioner and her request, as was his, was denied by the trial court.  It was
> within the trial court's discretion to deny the request for her to withdraw.  Trial
> counsel agreed that she did not appeal the trial court's ruling denying her
> withdrawal as counsel, however, absent an abuse of discretion, it is unlikely that
> her doing so would have resulted in a different outcome on this issue.  *See State v.
> Branam*, 855 S.W.2d 563, 566 (Tenn. 1993) (the trial court's decision on
> withdrawal in a pending criminal matter rests within the sound discretion of the
> trial court and will not be reversed on appeal absent an abuse of discretion); *see
> also State v. Russell*, 10 S.W.3d 270, 274 (Tenn. Crim. App. 1999).  The Petitioner
> is not entitled to relief on this issue.

*Morrow II*, 2021 WL 4077029, at *8.

Respondent argues that the TCCA's rejection of these claims during post-conviction

appellate proceedings was not contrary to, or an unreasonable application of, federal law and was

not based on an unreasonable determination of the facts.  (ECF No. 23 at PageID 3191–94.)

The state court record supports the TCCA's determination that Petitioner failed to

demonstrate *Strickland* defective performance in counsel's decision not to appeal the denial of

Petitioner's motion for counsel to withdraw.  Counsel testified during the post-conviction

evidentiary hearings that she *did* advocate to withdraw as Petitioner's counsel.  (ECF No. 20-20 at

PageID 2447–49, 2467–68, 2473, 2509–11; *see also* ECF No. 19-7 at PageID 906–10, 925–26

(trial counsel's arguments, in the transcript of the October 5, 1998 hearing on motion for new trial,

that she "was in agreement [with Petitioner] [about] being allowed to withdraw as counsel because

20

[…] there was such a breakdown in the attorney/client relationship").)  Although trial counsel did not appeal the denial of Petitioner's motion for substitution of counsel (*see* ECF No. 1 at PageID 19–22; ECF No. 19-7 at PageID 925–28; ECF No. 20-20 at PageID 2468 & 2472–73), she did preserve the issue for appeal after judgment (*see* ECF No. 19-8 at PageID 940).

On direct appeal, the TCCA observed that any appeal by counsel would have lacked merit because "the trial judge did not abuse his discretion when he found no basis for requiring appointment of new counsel" (*Morrow I*, 1999 WL 1529719, at *4–5):

> After listening to defense counsel's arguments "that her relationship with the defendant had become acrimonious[,] the [trial] court found that the counsel's performance was more than adequate and that any breakdown in communications between the defendant and his attorney was not severe enough to require substitution of counsel.  The court also found that the request was an improper one to make in the middle of trial, because [if Petitioner's filing of a civil suit against counsel necessitated substitution] then in the middle of any trial that was heard in these courts if a defendant didn't like how things were going or wanted to reset this matter for six months, [he would only need to] walk across the street and file a civil suit, and boom, the attorney's gone and the case is reset.

*Id*.

The TCCA's observation about the weaknesses of any putative appeal by trial counsel is supported by state law.  Trial judges in Tennessee have wide discretion concerning substitution of appointed counsel because such motions involve the potential delay or continuance of trials:

> The court may, upon good cause shown, permit an attorney appointed under this part to withdraw as counsel of record for the accused […] The court may, upon its own motion, replace any attorney appointed under this part if the court deems replacement of the attorney necessary to preserve the rights of the accused."

Tenn. Code Ann. § 40-14-205(a)–(b).  *See also State v. Branam*, 855 S.W.2d 563, 566 (Tenn. 1993).  Appeals from the denial of a motion for substitution of counsel are reviewed on an abuse of discretion standard.  *See, e.g.*, *State v. Gilmore*, 823 S.W.2d 566, 568–69 (Tenn. Crim. App. 1991) (when an accused seeks to substitute counsel, the accused has the burden of establishing ineffective representation, irreconcilable conflict between the accused and counsel, or complete

breakdown in their communications; and the substitution determination is within the trial court's sound discretion). Furthermore, Tennessee places stringent limitations on interlocutory appeals, such as an appeal by trial counsel here would have been. *See* Tenn. R. App. P. 9 (in determining whether to grant leave for interlocutory appeal, courts consider: whether an appeal is needed to prevent irreparable injury; whether an appeal will preclude needless, expensive, and protracted litigation; and whether an appeal will address the need to develop a uniform body of law on the issue presented). Given this (1) broad discretion afforded the trial judge on Petitioner's motion for substitution and (2) the high standard for obtaining interlocutory appeal of the denial of that motion, any effort by trial counsel to appeal the denial of substitution of counsel stood little, if any, chance of prevailing.

This slim margin of success is relevant to the merits of Claims 2 and 3 of the Consolidated Amended § 2254 Petition.

"[C]ounsel cannot be ineffective for failing to raise a meritless issue." *Ruffin v. United States*, No. 21-4171, 2022 WL 18862485, at *2 (6th Cir. June 28, 2022) (internal citation omitted). The "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The [S]ixth [A]mendment guarantees only a fair trial and a competent attorney and does not ensure that defense counsel will recognize and raise every conceivable constitutional claim." *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989) (citing *United States v. Cronic,* 466 U.S. 648, 658 (1984) and *Engle v. Isaac*, 456 U.S. 107, 134 (1982)). Furthermore, when a legal argument is meritless, it follows that a petitioner does not suffer prejudice when such an argument was not raised by appellate counsel on direct appeal. *See United States v. Pierce*, 403 F. App'x 988, 989 (6th Cir. 2010) ("Because the Supreme Court has foreclosed the argument that

[…] counsel [could be] ineffective for not raising [a meritless claim], [a petitioner] cannot demonstrate prejudice: '[i]t is not ineffective assistance to fail to raise erroneous claims'") (internal citations omitted); *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from failure to raise a meritless claim"). In fact, Petitioner's own unsuccessful direct appeal about the substitution motion issue underscores the issue's lack of merit. *See Morrow I*, 1999 WL 1529719, at *3–5.

Having thoroughly reviewed the state court record, the Court cannot say that the TCCA's decision about Claims 2 and 3 was contrary to, or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. To accept Petitioner's premise in Claims 2 and 3 would mean finding counsel deficient for failing to raise a non-meritorious argument on appeal. The Court will not do so. *See Knowles*, 556 U.S. at 123; *Cronic*, 466 U.S. at 658; *Engle*, 456 U.S. at 134.

Furthermore, to the extent Petitioner also contends in Claims 2 and 3 that the trial court erred under state law in denying the motion for substitution of counsel, *see* ECF No. 1-1 at PageID 20 (contending that "good cause existed for substitution of counsel"), Petitioner's allegation is a non-cognizable state law claim. As explained *supra*, claims of state law error or incorrect application of state law are non-cognizable in federal habeas. *See* 28 U.S.C. 2254(a); *Swarthout*, 562 U.S. at 218; *Estelle*, 502 U.S. at 67–68; *Wilson*, 515 F.3d at 705.

For these reasons, Claims 2 and 3 are **DENIED** as without merit.

### 3. Claim 4: IAC In Failing To Use Petitioner's Medical Records At Trial; And Claim 5: IAC By Not Using Evidence Referenced In Opening Statement

As an initial matter, Claims 4 and 5 are not properly pled under Habeas Rule 2(c), which requires a petition to "state the facts supporting each ground" for relief. In Claim 4, Petitioner contends that trial counsel rendered deficient performance by not "utiliz[ing] [Petitioner's] medical records at trial." (ECF No. 1-1 at PageID 22–23.) In Claim 5, Petitioner argues that defense

counsel rendered defective performance by not "follow[ing] through on promises made during [her] opening statement." (*Id.* at PageID 35–36.) "A petitioner's failure to fulfill the pleading requirements of Habeas Rule 2(c) provides an appropriate basis for dismissal." *Grimes v. Mays*, No. 3:19-cv-0585, 2022 WL 3582487, at *9 (M.D. Tenn. Aug. 19, 2022) (citing *Guerrero v. Ford*, No. 1:17-cv-00103, 2019 WL 330878, at *12 (M.D. Tenn. Jan. 25, 2019) (dismissing claim under Habeas Rule 2(c) where petitioner "d[id] not set forth any facts to support his allegation ..."). Petitioner does not, in Claims 4 and 5, specify the "medical records" (ECF No. 1-1 at PageID 34–35) or identify the "doctors who treated [him]" (ECF No. 1-1 at PageID 35) that he contends counsel was deficient for not presenting. He does not describe what the doctors' testimony would have been or demonstrate how it would have changed the outcome at trial. Claims 4 and 5 fail to satisfy Habeas Rule 2(c) because Petitioner does not set forth facts to support his allegations.

Beyond this pleading deficiency, Claims 4 and 5 fail on the merits, as well.

At trial, defense counsel said in her opening statement, *inter alia*:

Dr. Wise and Dr. Nichols did conclude that Mr. Morrow suffered from ailments which led to him not being able to appreciate the wrongfulness of his conduct. I submit to the Court that there were findings from interviews with co-workers of Mrs. Morrow, other individuals that were familiar with Mr. Morrow and Mrs. Morrow's relationship, and the relationship of Mr. Morrow with his child, which led to the conclusion that this particular incident may have been something that was unusual […] I think that the proof will further show that Mr. Morrow was a person who was in the military for part of his life and also was stead[il]y employed as a self-employed plumber.

(ECF No. 19-3 at PageID 465–66.)

Petitioner contends in Claims 4 and 5 of the Consolidated Amended § 2254 Petition that trial counsel's performance was deficient because she failed to introduce the following evidence that she referenced in her opening statement: (1) hard-copies of Petitioner's medical records

(Claim 4) (ECF No. 1-1 at PageID 22–23); and (2) his military history, medical record,[6] and the

testimony of lay witnesses listed in Dr. Wise's and Dr. Nichols's expert reports (Claim 5) (ECF

No. 1-1 at PageID 35–36).  Respondent contends that the TCCA's rejection of Claims 4 and 5

during post-conviction appellate proceedings was not contrary to, or an unreasonable application

of, federal law and was not based on an unreasonable determination of the facts.  (ECF No. 23 at

PageID 3194–97.)

Claims 4 and 5 were exhausted before the TCCA and are entitled to habeas review on the

merits.  *See Morrow II*, 2021 WL 4077029, at *8–9.  (*See also* ECF No. 22-21 at PageID 3078.)

During post-conviction appellate proceedings, the TCCA concluded that Petitioner failed

to demonstrate *Strickland*'s deficient performance prong as to Claims 4 and 5:

> The Petitioner claims that trial counsel was ineffective for failing to present his
> medical records as evidence at his trial. The post-conviction court found this
> allegation to be without merit.  Trial counsel testified that the two doctors who
> examined the Petitioner included the contents of his medical records in their reports,
> thereby alleviating the need to introduce the records at trial.  We will not second-
> guess the decision by trial counsel not to introduce the paper medical records,
> particularly in light of their cumulative nature.  The Petitioner is not entitled to
> relief on this issue.
>
> [****]
>
> The Petitioner contends that trial counsel failed to deliver on several "promises"
> she made during opening argument, including the presentation of the medical
> records and lay witnesses' testimony.  The post-conviction court found this
> allegation to be without merit.  The evidence established that trial counsel did not
> follow through on those particular aspects of her opening argument because she did
> not think they would be beneficial to the Petitioner's case.  This tactical decision
> was made in light of the fact that the medical records were included in the doctors'
> voluminous reports, and in light of the fact that lay witnesses would potentially
> testify that the Petitioner had murdered his wife out of jealously instead of insanity.
> Such strategic or tactical decisions are given deference on appeal if the choices are
> informed and based upon adequate preparation.  The Petitioner is not entitled to
> relief as to this issue.

---

[6] In both Claims 4 and 5 of the Consolidated Amended § 2254 Petition, Petitioner
challenges trial counsel's failure to introduce Petitioner's hard-copy "medical records."  (ECF No.
1-1 at PageID 22–23, 35–36.)

*Morrow II*, 2021 WL 4077029, at *8–9.

Reasonable strategic decisions made after thorough investigation do not amount to ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable'") (quoting *Strickland*, 466 U.S. at 690). "'[C]ounsel is strongly presumed to have […] made all significant decisions in the exercise of reasonable professional judgment.'" *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 690); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012) (federal habeas courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (citing *Strickland*, 466 U.S. at 689); *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001)) ("[A] strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness").

"Under *Strickland,* we must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003). "Strategic decisions regarding what evidence and testimony to present at trial merit deference." *Ellington v. Parris*, No. 19-6366, 2020 WL 2924566, at *2 (6th Cir. Apr. 20, 2020) (citing *Strickland*, 466 U.S. at 690, and *Peterson v. Smith*, 510 F. App'x 356, 362 (6th Cir. 2013)). "Counsel's performance is entitled to great deference and a presumption of reasonableness. [I]n choosing to call a witness, '[f]or counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision ... must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" *Moore v. Mitchell*, 708 F.3d 760, 786 (6th Cir. 2013) (citing *Strickland*, 466 U.S. at 689) (other internal citation omitted).

26

The state court record supports the TCCA's determinations that Petitioner failed to demonstrate *Strickland* defective performance regarding Claims 4 and 5.

Specifically, as relevant to Claim 4, trial counsel testified at the September 1, 2017 post-conviction evidentiary hearing about her strategy concerning how best to present at trial the medical records and other information relied on by Dr. Wise and Dr. Nichols. She had determined that the testimony of Dr. Wise and Dr. Nichols best presented the substance of Petitioner's medical records:

> If you're asking me if [Dr. Wise's and Dr. Nichols's] evaluations, both physical and questioning you and the statements that they got from witnesses led them to their conclusions, yes. And then, of course, most certainly, the specific information that they got from the witnesses which seems to be outlined pretty thoroughly in the transcripts and in their testimony. I mean, they were able to speak quite broadly and specifically as related to the information that was provided by the witnesses, and it was presented to the Court. So any testimony that any of those witnesses, those laypersons would have given I think were specifically and, as I said, pretty broadly brought out at the trial.
>
> [****]
>
> I don't recall what evidence other than Dr. Wise and Dr. Nichols that was presented.[7] I believe that with the testimony presented by the two psychiatrists, that was sufficient. I don't know how old the medical records were from the Veterans Administration. But I do know that the information provided by Dr. Nichols and Dr. Wise was a recent evaluation and that was presented.
>
> [****]
>
> [Y]ou also have to remember something, that for the most part, if a lot of these individuals that you asked me about who had input or information to provide to Dr. Wise and/or Dr. Nichols, their statements were presented to the Court. Maybe not necessarily personally by them, but they were presented to the Court without issue through the testimony of Dr. Wise and Dr. Nichols. So it was presented.
>
> [****]
>
> I don't recall any paper that was presented, but I do recall there being a lot of medical information, records presented to the Court throughout the trial […] The

---

[7] The post-conviction trial court observed: "I just want to point out for the record that this [PCR] petition has been pending 16 years and the trial was 18 years ago […] [Defense counsel has] not been involved in this for 18 years." (ECF No. 20-20 at PageID 2416, 2460.)

[medical records] information was utilized. It was utilized in the reports that were
prepared by Dr. Wise and/or Dr. Nichols. As I stated before, anything that Dr.
Corey[8] had to say, and I just read quite a bit of that, all of that was presented to the
Court. So it was utilized to the fullest […] I don't know how much support you
think that [paper medical records] would give, especially if it's -- if you've got your
two experts who are testifying and they are accepted as experts, and then they are
testifying as to specific information contained in the documents. It's accepted by
the trier of fact here, Judge Dailey then. No, I don't agree to that. I don't agree
that [the paper medical records] would have necessarily aided the judge in making
his decision […] [A]s I said earlier, if no medical records – paper medical records
were presented, I did not find that to be necessary or found it to be redundant. It
would have been redundant simply because you have two doctors that are testifying,
presenting the information that is – the information that's in the medical records.
And so when they are testifying and they are presenting the information and they
have a written record, then that's presented to the Court […] [T]hey were expert
witnesses who were credible as relates to their expertise, their testimony

(ECF No. 20-20 at PageID 2408–09, 2411–14, 2421, 2424–25, 2437–41.) In short, defense
counsel's reasoned conclusion—after comparing the contents of Petitioner's medical records to
the substance of Dr. Wise's and Dr. Nichols's reports and testimony—was that the paper medical
records were unnecessary at trial since they were cumulative of the expert witness testimony. (*Id.*
at PageID 2436.) The record bears this out. Dr. Nichols testified at trial about the sources he
relied on in reaching his opinion: (1) his three in-person evaluations of Petitioner; (2) his interviews
of Petitioner's ex-sister-in-law, Mrs. Morrow's co-worker, and Mrs. Morrow's great-aunt; and (3)
the contents of Petitioner's medical records from Methodist South and Petitioner's primary
physician Dr. Baker. (ECF No. 19-3 at PageID 520–24.) And Dr. Wise also testified about the
contents of Petitioner's medical files that he had reviewed in preparing his expert opinion:

Dr. Corey provided a very detailed consultation note indicat[ing] that [Petitioner]
was acutely psychotic […] [I received from Dr. Susan Baker the Petitioner's]
medical record for June 17 and 19 […] Dr. Baker's [file] was the second set [of
documents I received]. [T]he first document would be from the Methodist South
Emergency Room […] I evaluated the records from The Med. I evaluated the
records from the MMHI where he was immediately transferred to after The Med.
And I evaluated the records from Midtown Mental Health Center, Forensic

---

[8] Dr. Corey evaluated Petitioner at The Med after the Incident. Dr. Wise testified that Dr.
Corey "provided a very detailed consultation note, indicat[ing] that [Petitioner] was acutely
psychotic." (ECF No. 20-20 at PageID 2422.)

Department […] They believe that he was acutely psychotic and that he was also dangerous to himself.

(ECF No. 19-4 at PageID 620–27.)

As relevant to Claim 5, trial counsel testified at the post-conviction evidentiary hearing about her conclusions that: (1) Petitioner's military records were irrelevant for purposes of his defense; and (2) lay witnesses could add nothing to the defense strategy because, lacking the requisite professional expertise, lay witnesses could not testify about Petitioner's medical condition. As to the military records, counsel testified that (1) there was nothing in the Petitioner's medical records about him suffering PTSD and (2) the experts' testimony was based on Petitioner's mental state at the time of the Incident:

> If I received [Petitioner's military history], I would have reviewed it and determined that it would have no relevancy at that time to a determination of your sanity or not, because there's nothing in here other than part 30, where it says, "(indiscernible) is not recommended for reenlistment" that would -- that I would investigate as related to the defense of your case.
>
> [****]
>
> [I]f I received this document, I would have been aware that you were in the military. But there is nothing on here that would alert me to you suffering from PTSD, not anything on this document. Then most certainly my conversations with you, I don't recall you ever saying that I'm suffering from PTSD.
>
> [****]
>
> [Dr. Wise's and Dr. Nichols's] testimony was based on records that they received. Their conclusions, I believe, were based on the situation that occurred at the time, which was the crime that was committed. So if you're asking me if anything that they did and then this document led me to believe that you suffered from PTSD and conversations with you, no. I don't recall any of that to lead me to determine that you suffered from PTSD. Just that at the time of the occurrence of the offense, you were not guilty by reason of insanity.

(ECF No. 20-20 at PageID 2419–20.) And, as to lay witnesses, counsel testified:

> I believe I presented all the evidence that was relevant and necessary as far as the defense of your case. I believe that what I presented did meet the statements that I made in my opening statement, as far as presenting all the evidence in your defense.

[****]

> When the doctors were giving me their reports, I recall usually we would review
> the report, talk to -- talk about who they talked with, review that content and then
> go from there.  So I'm sure I probably did talk with him about Ms. Catron's
> statement, et cetera [...] The thing about the experts versus lay witnesses is you
> make a determination, as the defense attorney, as to whether or not when the
> testimony is going to be given weight what might be given more weight than expert
> versus lay witness.  So just thinking as of today, I don't and would not have seen
> any reason to call any lay witnesses to necessarily back up what the doctors would
> have had to say to confirm or whatever [...] I don't know how relevant [lay witness
> statements] would have been.  Actually, I don't think that it would have been
> relevant.  And the reason why I say that is because the statements that they made to
> Dr. Wise were repeated.  They were the specific statements that were made to Dr.
> Wise that was repeated by Dr. Wise in his testimony.  So all it would have been
> was basically to reiterate what he said, what he was testifying to.  So they weren't
> going to be any rebuttal witnesses [...] If I recall correctly, and as I said, it's been
> a while ago, there was really no necessity to call in additional lay witnesses to testify
> as to what the expert witnesses had testified to.

(ECF No. 20-20 at PageID 2403, 2405–06, 2421.)  Had counsel called the lay witnesses at trial,

she risked inviting testimony about their knowledge of Petitioner's tumultuous relationship with

his wife, which might have bolstered the State's case that the murders were the product of jealousy

rather than the defense's theory that they were the result of insanity:

> These witnesses that the doctors talked to were individuals who basically agreed
> with the assessment of how you were acting at the time of the commission of the
> crime.  They didn't have anything that I recall to say as to whether or not you and
> Mrs. Morrow were having any fights or arguments about anything.  And that's what
> the rebuttal witnesses were testifying to, not as to your insanity, but as to your
> jealousy and your desire to kill your wife and your son.

(*Id.* at PageID 2405, 2486–87.)

Trial counsel's post-conviction hearing testimony supports the TCCA's rejection of Claims

4 and 5.  The record shows that counsel: (1) reviewed Petitioner's psychiatric records; (2) met with

Dr. Wise and Dr. Nichols about their anticipated testimony regarding the information they had

reviewed in the Petitioner's medical records; and (3) determined the medical records were

duplicative of the experts' testimony and thus unnecessary at trial.  (*See* ECF No. 20-20 at PageID

2408–09, 2411–14, 2421, 2424–25 & 2437–41; ECF No. 19-3 at PageID 520–25, 529; ECF No.

19-4 at PageID 620–35.)   Trial counsel's "[s]trategic decisions regarding what evidence and testimony to present at trial merit deference."  *See Ellington*, 2020 WL 2924566, at *2.  Like the TCCA, this Court "will not second-guess the decision by trial counsel not to introduce the paper medical records."  *See Morrow II*, 2021 WL 4077029, at *8.

What is more, Petitioner's bare speculation that he "might" have been convicted of a lesser offense if counsel had used the paper medical records (ECF No. 1-1 at PageID 22–23) does not demonstrate that he was prejudiced by counsel's tactical decision about the medical records.  *See Strickland*, 466 U.S. at 694; *see also Hutchison v. Bell*, 303 F.3d 720, 748–49 (6th Cir. 2002) ("[A] petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material"); *Tinsley v. Million*, 399 F.3d 796, 810 (6th Cir. 2005) ("In the absence of any evidence showing that [petitioner's proffered witnesses] would have offered specific favorable testimony, [petitioner] cannot show prejudice from counsel's strategy recommendation not to introduce this evidence").  Petitioner contends that his medical records would have shown at trial that he "*had been* treated with a psychotropic medication and diagnosed to be suffering from alcohol induced psychosis and organic brain syndrome several days before, during, and after the commission of the offenses."  (ECF No 1-1 at PageID 22 (emphasis in original).)  The record contradicts his contention.  Dr. Wise testified that Petitioner's medical records show he was (1) prescribed psychotropic medication and (2) diagnosed with organic brain syndrome only <u>after</u> the Incident.  (ECF No. 19-4 at PageID 628, 630–31.)  Trial counsel had determined that Petitioner's psychotropic medication prescriptions for, *inter alia*, Ativan, were irrelevant to his defense because he was not taking Ativan before, or at the time of, the Incident.  (ECF No. 20-20 at PageID 2429–31.)  The post-conviction trial court agreed with defense counsel's analysis:

Mr. Morrow, we heard your testimony. I don't think you testified you were taking Ativan at the time of the killing. I don't think that was your testimony. So I'm trying to figure out how that would be relevant. If you weren't taking that medication at the time of the killings then how would that be relevant to your mental state at the time of the killings? Your mental state afterwards would not be relevant. It would only be your mental state at the time of the criminal acts.

(*Id.* at PageID 2431.) Counsel cannot be deficient for not introducing irrelevant evidence.

Furthermore, Petitioner does not contend that Dr. Wise or Dr. Nichols inaccurately or insufficiently presented the contents of the paper medical records. (*See* ECF No. 1-1 at PageID 22–23; ECF No. 28.) Petitioner does not demonstrate that the trial court would have changed its ruling if counsel had used the medical records at trial, instead of introducing their contents through the testimony of Dr. Wise and Dr. Nichols. Thus, Petitioner has not carried his burden of overcoming the presumption that trial counsel's decision not to use the medical records fell below an objective standard of reasonableness. *See Strickland*. 466 U.S. at 689.

As to Claim 5's allegations about counsel's failure to introduce Petitioner's military history and lay witnesses' testimony, the record shows that counsel: (1) concluded that Petitioner's PTSD from military service was irrelevant to his defense because there was no record of his PTSD at the time of the Incident (ECF No. 20-20 at PageID 2420–21); (2) strategized that "there was really no need to bring in anyone other than the doctors and their opinions and statements as to whether [Petitioner] w[as] insane or not" (*id.* at PageID 2402); and (3) determined that "lay witnesses would potentially testify that the Petitioner had murdered his wife out of jealously instead of insanity." *See Morrow II*, 2021 WL 4077029, at *9. She made these strategic evidentiary decisions after: "thorough investigation" of the case's facts (*see Strickland*, 466 U.S. at 690) and analysis of what would be the most favorable defense presentation. The TCCA correctly applied the principles of *Strickland* and its progeny when it concluded that "[s]uch strategic or tactical decisions are given deference […] if the choices are informed and based upon adequate preparation." *Id.* at *9.

The Court concludes that the TCCA's rejection of Claim 4 and Claim 5 was not contrary to, or an unreasonable application of, *Strickland* and its progeny, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Claim 4 and Claim 5 are without merit.

For the reasons explained above, Claims 4 and 5 are **DENIED**.

## B.  Claims 6, 7, And 8 Are Not Cognizable In Federal Habeas

In Claim 6, Petitioner contends that "[t]he post conviction court violated Morrow's State and Federal due process rights to subpoena witnesses to testify at the post conviction hearing." (ECF No. 1-1 at PageID 36–37 (alleging that the post-conviction trial court "violat[ed] Morrow's right to subpoena Dr. Suzann Baker, Peggy Catron, Maria Rooks, Dr. Robert Koes, Dr. Emmu, Martha Dr. William Spurbeck [sic], and several others").)  He contends the listed witnesses "would have supported Morrow's defense of insanity at the time of the offenses." (*Id*. at PageID 37.)

In Claim 7, Petitioner argues that "[t]he post conviction court refus[ed] to allow Morrow to make closing arguments as promised by the judge, [which] violated Morrow's State and Federal rights to prove his case by clear and convincing proof." (*Id*. at PageID 38.)  He contends that "[c]losing arguments were necessary to rebut trial counsel's testimony regarding waiver of jury, failure to utilize medical records, Morrow's military records, and counsel's failure to notice[,] object to[,] or appeal from [the] court's refusal to allow her to withdraw from the case." (*Id*.)

In Claim 8, Petitioner contends that "[t]he post conviction court violated the Tennessee Post Conviction Act[9] and thereby violated Morrow's State and Federal Due [P]rocess rights to a full, fair, and timely post conviction hearing." (*Id*. at PageID 39.)  He argues that "[d]ue to the post conviction court's judicial roundabouts and inordinate delays, Morrow's petition languished in the post conviction court for 16 years before a hearing commenced." (*Id*.)

When Petitioner raised Claims 6, 7, and 8 during post-conviction appellate proceedings, *see Morrow II*, 2021 WL 4077029, at \*6 (*see also* ECF No. 22-21 at PageID 3078), the TCCA concluded that each claim lacked merit:

> The record is replete with opportunities the Petitioner had to be heard and present evidence and arguments to the post-conviction court; indeed, the post-conviction made every effort to give the Petitioner an opportunity to be heard in a meaningful manner.  The hearings were continued multiple times to allow the Petitioner to subpoena his witnesses or present evidence of his arguments.  We count approximately twenty hearings on this petition at which the Petitioner was permitted to present evidence.  Accordingly, we conclude that the post-conviction court afforded the Petitioner the opportunity to present arguments on his petition and present witnesses; therefore, the post-conviction court did not abuse its discretion when it dismissed the petition.  This allegation is without merit.

*Morrow II*, 2021 WL 4077029, at \*7.

Respondent contends that Claims 6, 7, and 8 are non-cognizable in federal habeas because they "arise from alleged errors by the post-conviction court." (ECF No. 23 at PageID 3198–99.)

To the extent Petitioner alleges in Claims 6, 7, and 8 a violation of Tennessee constitutional law and its Post-Conviction Procedure Act, Tenn. Code Ann. §§ 40-30-101, *et seq*. (ECF No. 1-1

---

[9]  "Relief under [the Post-Conviction Procedure Act] shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States."  T.C.A. § 40-30-103.  "All that due process requires in the post-conviction setting is that the defendant have the opportunity to be heard at a meaningful time and in a meaningful manner." *Stokes v. State*, 146 S.W.3d 56, 61 (Tenn. 2004).  The TSC has held that a petitioner was afforded a "full and fair" hearing when an evidentiary hearing was held, the petitioner was afforded every opportunity to present evidence and argument at the hearing, the trial record was introduced into evidence, and "the trial judge determined from that record and the argument of counsel, that the allegations were without merit." *House v. State*, 911 S.W.2d 705, 711 (Tenn. 1995).

at PageID 36–39), his claims are not cognizable in federal habeas. Claims of state law error or incorrect application of state law are non-cognizable in a federal habeas proceeding. *See* 28 U.S.C. 2254(a); *Swarthout*, 562 U.S. at 218; *Estelle*, 502 U.S. at 67–68; *Wilson*, 515 F.3d at 705.

To the extent Petitioner alleges in Claims 6, 7, and 8 a violation of federal constitutional law (ECF No. 1-1 at PageID 36–39), his claims are similarly non-cognizable. "A prisoner cannot challenge the adequacy of state post-conviction proceedings on federal habeas review." *Teats v. Genovese*, No. 22-5365, 2022 WL 22317601, at *4 (6th Cir. Nov. 4, 2022) (citing *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854–55 (6th Cir. 2017)) (other internal citations omitted). "[E]rrors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Curtis v. Eller*, No. 23-5371, 2023 WL 7189309, at *4 (6th Cir. Sept. 14, 2023) (citing *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) ("[T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review")). "Habeas corpus cannot be used to challenge errors or deficiencies in state post-conviction proceedings." *Lindsey v. Jenkins*, No. 21-3745, 2022 WL 20854727, at *1 (6th Cir. Dec. 1, 2022) (citing *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) and *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) ("relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not the custody of a defendant")).

The state law and federal law due process allegations in Claims 6, 7, and 8 are **DENIED** because they are non-cognizable in federal habeas. *See Sheldon v. Black*, No. 20-4156, 2021 WL 1654419, at *4 (6th Cir. Apr. 20, 2021) (citing *Cress*, 484 F.3d at 853).

### C.  Claim 9 Is Procedurally Defaulted

Petitioner contends that the "trial court's order forcing [Petitioner's trial] attorney to continue her representation of Morrow over counsel's objection based on conflict of interest

require[s] automatic reversal." (ECF No. 12 at PageID 91.) Petitioner did not raise Claim 9 before the TCCA during direct appeal, *see Morrow I*, 1999 WL 1529719, at *2–5 (*see also* ECF No. 19-8 at PageID 940; ECF No. 19-10 at PageID 1022), or during post-conviction appellate proceedings. *See Morrow II*, 2021 WL 4077029, at *5. (*See also* ECF No. 22-21 at PageID 3078.) Because there is no avenue by which he may now obtain state-court review of Claim 9, it is technically exhausted but procedurally defaulted by Tennessee's applicable one-year statute of limitations and its prohibition against successive petitions. *See Jones*, 696 F.3d at 483; Tenn. Code Ann. 40-30-102(a), -102(c).

Petitioner makes no effort to overcome his procedural default of Claim 9. He does not allege cause and prejudice for his procedural default. (ECF Nos. 1, 12 & 28.) *See Lucas*, 179 F.3d at 418; *Schlup*, 513 U.S. at 320–21. Additionally, he makes no argument that failure to review Claim 9 would result in a fundamental miscarriage of justice. (ECF Nos. 1, 12 & 28.) *See Schlup*, 513 U.S. at 321. Because Petitioner has not met his burden of showing cause and prejudice or a fundamental miscarriage of justice to vitiate the procedural default, Claim 9 is **DENIED**.

For the reasons explained above, the Consolidated Amended § 2254 Petition (ECF Nos. 1 & 12) is **DENIED** in its entirety.

## IV.    THE MOTIONS FOR DE NOVO REVIEW

In the Motions For De Novo Review, Petitioner seeks de novo review of: Claim 1 (ECF No. 39 at PageID 3430–31; ECF No. 40 at PageID 3435); Claims 2 and 3 (ECF No. 39 at PageID 3429–30; ECF No. 40 at PageID 3434); Claims 4 and 5 (ECF No. 39 at PageID 3431; ECF No. 40 at PageID 3436); and Claims 6, 7, and 8 (ECF No. 39 at PageID 3431–32; ECF No. 40 at PageID 3436–37). He asks this Court to "review all claims that were raised during the post-conviction hearing and appealed through the state court appellate process, but have not been answered by the state court." (*Id.* at PageID 3432.) The relief Petitioner seeks is unavailable.

36

Review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181–82. The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2241, *et seq.*, permits de novo review of a claim adjudicated on the merits when a state court decides a federal claim in a way that is "contrary to" or an unreasonable application of clearly established Supreme Court precedent. *Johnson v. Williams*, 568 U.S. 289, 303 (2013); *see Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) ("A federal court must then resolve the claim without the deference AEDPA otherwise requires"). When a petitioner establishes that a state court decision was contrary to, or an unreasonable application of, clearly established federal law, the federal court may consider new evidence offered in the case that was not presented in state court. *See Richter*, 562 U.S. at 98.

Claims 1 – 5 were adjudicated on the merits during post-conviction appellate proceedings by the TCCA, which expressly referenced evidence presented at the post-conviction evidentiary hearing. *Morrow II*, 2021 WL 4077029, at *7–9. De novo review would be appropriate only if the TCCA's decision did not meet the requirements of § 2254(d). *See Holder v. Palmer,* 588 F.3d 328, 343 (6th Cir. 2009). That is not the case here. As explained above, the TCCA's rulings about Claims 1 – 5 were not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. The TCCA cited and correctly applied *Strickland* in its analysis of the IAC claims, and the TCCA's rulings were based on a reasonable determination of the facts in light of the evidence presented in the state courts. *Morrow II*, 2021 WL 4077029, at *6–8. Claims 1 – 5 do not warrant de novo review. *See Williams v. Taylor*, 529 U.S. 362, 404–05 (2002); *Bies v. Shelton*, 775 F.3d 386, 395 (6th Cir. 2014).

Claims 6 – 8 were also adjudicated on the merits by the TCCA during post-conviction appellate proceedings. *Morrow II*, 2021 WL 4077029, at *7. The TCCA relied on evidence from post-conviction trial proceedings. *See id.* The TCCA's rulings about Claims 6 – 8 were not

contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court because Claims 6 – 8 are, in the first instance, non-cognizable in federal habeas.

For these reasons, the Motions For De Novo Review (ECF Nos. 39 & 40) are **DENIED**.

## V.    THE MOTION FOR JUDICIAL NOTICE

In the Motion For Judicial Notice, Petitioner asks the Court to take judicial notice of: "the evidence and proof […] Petitioner presented […] during the post-conviction hearing" (ECF No. 41 at PageID 3440–41); the post-conviction trial court's "findings of fact and conclusion[s] of law" (*id*. at PageID 3441–42); and Dr. Wise's, Dr. Wyatt's, and Petitioner's testimony at the post-conviction evidentiary hearing.  (*Id*. at PageID 3442–43.)

Federal Rule of Evidence 201(b)(2) permits a court to "judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

The Court need not invoke Federal Rule of Evidence 201 here.  The nature of federal habeas review is to examine the state court record and appellate courts' decisions for constitutional error.  *See* 28 U.S.C. § 2254.  Petitioner's Motion For Judicial Notice, on the other hand, seeks to introduce evidence which is unnecessary to the resolution of the Consolidated Amended § 2254 Petition.  *See Pinholster*, 563 U.S. at 181 (federal review of habeas relief under § 2254(d) is limited to the state court record).  The Motion For Judicial Notice (ECF No. 41) is therefore **DENIED**.

## VI.    APPELLATE ISSUES

There is no absolute entitlement to appeal a district court's denial of § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Bradley v. Birkett*, 156 F. App'x 771, 772 (6th Cir. 2005).  The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner.  Rule 11, § 2254 Rules.  A petitioner may not appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right, and the COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  A "substantial showing" is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011).  Courts should not issue a COA as a matter of course.  *Bradley*, 156 F. App'x at 773.

In this case, there can be no question that (1) Claims 1, 2, 3, 4, and 5 lack merit; (2) Claims 4 and 5 are also improperly pled under Habeas Rule 2(c); (3) Claims 6, 7, and 8 are non-cognizable in federal habeas; (4) Claim 9 is procedurally defaulted for failure to exhaust in state court; and (5) de novo review of Claims 1 – 8 would be improper.  Because any appeal by the Petitioner on the issues raised in his Consolidated Amended § 2254 Petition does not deserve attention, the Court **DENIES** a COA.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)–(5).  In this case, for the same reasons the Court denies a COA, the Court determines that any appeal would not be taken in

good faith.  It is therefore **CERTIFIED**, pursuant to Fed. R. App. P. 24(a), that any appeal in this

matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**.[10]

        **IT IS SO ORDERED**, this 31st day of March, 2025.

                          *s/ Mark S. Norris*
                          MARK S. NORRIS
                          UNITED STATES DISTRICT JUDGE

---

[10]  If the Petitioner files a notice of appeal, he must pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days of the date of entry of this Order.  *See* Fed. R. App. P. 24(a)(5).